IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARGARET E. WALSH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>POPULAR, INC., et al.,<br><br>    Defendants. | Civil No. 09-1552 (ADC) |
| NORMA MONTAÑEZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>POPULAR, INC., et al.,<br><br>    Defendants. | Civil No. 09-1646 (ADC) |
| STEFFANI DOUGAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>POPULAR, INC., et al.,<br><br>    Defendants. | Civil No. 09-1682 (ADC) |

**OPINION & ORDER**

**I.**     **Factual and Procedural Background**

The instant action involves claims for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1011, *et seq.* ("ERISA"), with respect to the Popular, Inc. Puerto Rico Savings and Investment Plan (the "PR Plan") and the Popular, Inc. U.S.A. 401(k) Savings & Investment Plan (the "USA Plan") (collectively the "Plan").

On April 13, 2011, plaintiffs notified the court that they had reached a settlement agreement[1] with defendants and moved the court to enter an order certifying a settlement class under Federal Rule of Civil Procedure 23(b)(1), granting preliminary approval to the

---

[1] The terms of the proposed settlement agreement are set forth in the Class Action Settlement Agreement ("the proposed settlement"). **ECF No. 120-8**.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                 Page 2

proposed settlement agreement and approving the proposed notice to class members. **ECF No. 120**. On June 8, 2011, the court held a preliminary fairness hearing (**ECF No. 132**) and, on June 23, 2011, the court entered an order certifying the settlement class, approving the notice to be sent to class members, appointing lead counsel and preliminarily approving the proposed settlement (**ECF No. 133**). At that time, the court set a period of time and a procedure for class members to file objections. **ECF No. 133**.

On August 5, 2011, plaintiffs moved the court for final approval of the proposed settlement, certification of a settlement class,[2] approval of the plan of allocation, approval of awards for named plaintiffs as class representatives,[3] and approval of attorneys' fees and reimbursement for expenses. **ECF Nos. 134, 138 & 139**. In support of their request for attorneys' fees and costs and in support of their request for settlement approval, plaintiffs also filed a compendium of unreported authorities (**ECF No. 140**),[4] and the declarations of lead counsel,[5] other counsel and named plaintiffs (**ECF No. 136**).[6] Plaintiffs also submitted the report of an independent fiduciary who examined the settlement agreement. **ECF No. 142**.[7] On August 26, 2011, the court conducted a final fairness hearing. **ECF No. 148**. During the hearing, the court requested further information regarding the requested attorneys' fees and expenses. *Id*. In response, plaintiffs subsequently filed the joint declarations of class counsel Robert Harwood ("Harwood") and Thomas McKenna ("McKenna"). **ECF No. 136**. Finding

---

[2] The court previously unconditionally certified the class for settlement purposes under Federal Rule of Civil Procedure 23(b)(1)(B). At this juncture, the court sees no reason to de-certify the class or expound further upon its previous findings. Thus, this request is **MOOT**.

[3] The named plaintiffs appointed as class representatives are Margaret E. Walsh, Norma Montañez and Steffani Dougan.

[4] **ECF No. 140** is **NOTED**.

[5] The court previously named the law firms of Gainey & McKenna and Hardwood Feffer as lead counsel under Rule 23(g) and Nelson Robles-Díaz as liason counsel. **ECF No. 133**.

[6] **ECF No. 136** is **NOTED**.

[7] **ECF No. 142** is **NOTED**.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                                    Page 3

these declarations lacking in that they did not provide itemized accountings of time expended in relation to the tasks performed by counsel, the court ordered their re-submission with such information included. **ECF No. 150**. Subsequently, counsel provided the requested itemized accountings of time expended. **ECF No. 151**.[8]

## II.   Final Approval of Settlement

First and foremost, plaintiffs request that the court grant final approval to the proposed settlement, as well as to the plan of allocation. **ECF Nos. 13 4 & 138**. Plaintiffs argue that the settlement is entitled to a presumption of fairness as it was reached after meaningful discovery and after arms-length negotiations. **ECF No. 138**. Further, plaintiffs argue that the complexity, expense and likely duration of litigation in the instant case weigh heavily in favor of approving the proposed settlement. *Id.* Plaintiffs also aver that, were they to proceed to trial, the risks of establishing liability and damages would be high, particularly as the relevant jurisprudence demonstrates a trend towards defense verdicts in ERISA company stock fund cases that proceed to trial. *Id.* Moreover, plaintiffs assert that they conducted significant discovery and expended considerable efforts in litigating the instant case prior to the settlement. *Id.* Plaintiffs also note that counsel who negotiated the settlement are all experienced in the field and that the settlement was reached after several arms-length negotiations. *Id.* Additionally, plaintiffs argue that the settlement fund amount is reasonable in light of the risks of zero recovery inherent in the instant case. *Id.* Finally, plaintiffs note that no class member objected[9] to the settlement within the time frame and deadline imposed by the court. *Id.*

---

[8]  **ECF No. 151** is **NOTED**.

[9]  Plaintiffs subsequently filed two informative motions to which they attached two handwritten letters which purport to be objections filed by a class member. These are hereby **NOTED**. **ECF Nos. 143 & 145**. However, these letters were not filed with the court by the deadline set forth in the court's order preliminarily approving the settlement. *See* **ECF No. 133**. Further, from the second letter, it appears that the writer refers to grievances relating to shares of stock which were not purchased during the relevant class period. Thus, the court concludes that no valid objections to the proposed settlement were filed.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                                              Page 4

      Under the guidelines of Federal Rule of Civil Procedure 23(e) in order to give final approval to a settlement, the Court must determine whether its terms are "fair, reasonable and adequate." FED.R.CIV.P. 23(e)(2). In cases, such as the instant one, where class settlement is proposed after a class is certified solely for settlement purposes, the Court's judicial review is "more difficult and more important" than in cases where settlements are reached "only after class certification has been litigated through the adversary process." Manual for Complex Litigation §21.612 (4th ed. 2004). Although the First Circuit Court of Appeals has yet to definitively espouse a set of determinative factors for assessing the fairness, reasonableness and adequacy of a proposed settlement, two District Courts within this circuit have thus far followed a modified version of the *Grinnell* factors set forth by the Second Circuit Court of Appeals and adopted by the Third Circuit. *See In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 259-60 (D.N.H. 2007)(quoting the factors of *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) but following the modified *Grinnell* factors set forth by *In re Compact Disk Min. Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D.Maine 2007)). In the instant case, the court shall follow suit, applying the modified *Grinnell* factors set forth by *In re Compact Disk*:

> (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration.

*In re Compact Disk*, 216 F.R.D. at 206. "[T]he ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *National Assn. Of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

      The instant case involves ERISA company stock fund claims which revolve around alleged breaches of fiduciary duty by defendants who administered and managed 401(k) plans held by class members. The jurisprudence surrounding such claims is still relatively

sparse and evolving. *See e.g. LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (noting the sparsity of jurisprudence relating to ERISA breach of fiduciary duty claims); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 n.13 (S.D.N.Y. 2004) (noting the esoteric, rapidly developing nature of ERISA breach of fiduciary duty cases). Further, if the proposed settlement were to fail, parties would certainly spend several more years and considerable sums of money litigating the matter through the dispositive motion and trial phases of this case. Additionally, plaintiffs bear a heavy burden of proof at the summary judgment and trial phases. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D.Mich. 2007) (noting the heavy burden which ERISA plaintiffs must bear where settlement does not occur prior to summary judgment and trial). Accordingly, while plaintiffs in the instant case are confident that their claims are meritorious,[10] they face a substantial risk of zero recovery if the instant settlement is not approved due to the weight of the burden which they bear. Weighing the threat of zero recovery at trial or at the brevis disposition phase against the $8.2 million proposed settlement presently before the court, the court concludes that the present settlement represents a fair valuation of a settlement reached at this stage of litigation in the instant case. Further, although the instant case has not proceeded through all stages of formal discovery, plaintiffs have survived a motion to dismiss[11] and conducted substantial discovery in tandem with their settlement efforts. Thus, the first, third and sixth factors of the modified *Grinnell* test weigh in favor of granting final approval to the proposed settlement.

Additionally, after receiving notice which complied both with this court's order (**ECF**

---

[10] While plaintiffs assert that their claims are meritorious, they also acknowledge that defendants may present several strong defenses at later stages of the litigation. **ECF No. 138**. The defenses available to defendants, coupled with plaintiffs' heavy burden, only serve to enhance the court's conviction that plaintiffs face a significant risk of zero recovery if the instant case proceeds through the stages of litigation.

[11] Before the court there was a Report and Recommendation (**ECF No. 79**), which the court ruled upon on September 30, 2010. At the time, the court indicated that defendants' motion to dismiss was to be granted in part and denied in part. **ECF No. 110**. At the time when the Opinion and Order was to issue, defendants filed a motion containing supplemental authority and the parties subsequently entered into the final phases of the settlement negotiations which led to the instant proposed settlement. Because of this, the court's written opinion and order was not released.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                                      Page 6

**No. 133**) and with Federal Rule of Civil Procedure 23(e), no class member filed a valid objection[12] to the proposed settlement with the court. Moreover, as the court already determined at the preliminary fairness phase, "the settlement agreement was only reached after four months of arms-length and intensive negotiations between experts in the field." **ECF No. 133**. There is also no evidence of collusion or other unfair dealings between counsel during the settlement process. Accordingly, the fourth and fifth prongs of the modified *Grinnell* test likewise weigh in favor of granting final approval to the proposed settlement. Thus, the court finds that the proposed settlement is fair, reasonable and adequate under Rule 23(e) and hereby **GRANTS** plaintiffs' request for final approval of the settlement agreement (**ECF No. 134**).

### III.   Approval of the Plan of Allocation and Awards for Named Plaintiffs

Plaintiffs also request that the court approve the plan of allocation submitted in relation to the settlement agreement. **ECF No. 134**. Their request is bolstered by the report of an independent fiduciary which affirms that the settlement and allocation plan are reasonable. **ECF No. 142**.

The court's inquiry regarding a proposed plan of allocation is merely whether the plan is fair and reasonable. *Hoschstadt v. Boston Sci. Corp.*, 708 F.Supp. 2d 95, 109 (D.Mass. 2010) (citing *In re Tyco*, 535 F.Supp. 2d at 262). The plan of allocation proposed in the instant case allows for each Plan participant[13] to receive a proportionate share of the net proceeds of the $8.2 million settlement based upon the approximate decline in the value of the shares which each participant held during the class period in comparison with the decline in value suffered

---

[12] As previously noted, plaintiffs submitted to the court two handwritten letters which purported to be objections; however, neither complied with the procedure for objections set forth by the court. Furthermore, the writer refers to stock transactions which fall outside the class period.

[13] Defendants and *de minimis* Plan participants who would only receive payouts of $10 or less are excluded from recovery as class members.

by other Plan participants.[14] The methodology for determining each Plan participant's *pro rata* share of the settlement fund takes into account acquisitions and dispositions of Fund stock and presents a comprehensive and detailed formula for accurately determining each class member's losses relative to those of the class as a whole. Further, the plan of allocation is designed to distribute each class member's share of the settlement fund in a manner which maximizes the post-tax value of the pay-outs. Moreover, several other courts have previously approved similar plans of allocation in company stock fund ERISA cases. *See In re Delphi*, 248 F.R.D. at 491-93; *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-8853, 2006 WL 2789862, at *10 (S.D.N.Y. Sept. 27, 2006) (approving a plan of allocation where class members' recovery was calculated in accordance with the decline in value of their plan holdings during the class period and noting that several other courts had already approved similar plans). Thus, the court finds that the plan of allocation proposed in the instant case is fair and reasonable and, accordingly, the court **GRANTS** plaintiffs' request to approve the same (**ECF No. 134**). Further, the court **GRANTS** plaintiffs' request that the three named plaintiffs each receive $8,000 in case contribution awards (**ECF No. 134**) for their assistance in pursuing recovery for the class.

### IV.   Attorneys' Fees and Expenses

In reward for their efforts in the instant case, counsel request an award of 33 1/3% of

---

[14] The formula for determining the net loss of each Plan member for purposes of determining his/her *pro rata* share of the net proceeds is as follows:
> Net Loss = A+B-C-D, where . . . (1) A = dollar value, if any, of the balance invested in [the Fund] at the beginning of the Class Period; (2) B = the dollar value, if any, of all purchases and other acquisitions of shares of all purchases and other acquisitions of shares of the Employer Stock Fund during the Class Period as of the time of purchase or other acquisition; (3) C = the dollar value, if any, of all sales and other dispositions (including forfeitures) of shares of [the Fund] during the Class Period as of the time of sale or other dispositions (including forfeitures) of shares of [the Fund] during the Class Period as of the time of sale or other disposition; and (4) D = the dollar value, if any, of the balance invested in [the Fund] at the end of the Class Period.

**ECF No. 136-4**.

the total settlement fund[15] ("the fund") under the percentage of the fund ("POF") approach. **ECF Nos. 134 & 139**. In support of this request, counsel proffer that they have expended 2,698.9 hours on the instant case, resulting in a lodestar of $1,422,727.25 to utilize as a cross-check against the POF requested. **ECF No. 139**. Further, counsel request the reimbursement of $167,225.67 for expenses incurred in connection with the instant case and settlement. **ECF Nos. 134 & 139**. However, during the final fairness hearing, the court noted that counsel had only provided the court with generalized listings of hours of work performed and categorical tabulations of expenses incurred. *See* **ECF No. 148**. Accordingly, the court requested that counsel provide the court with detailed and itemized tabulations of the time and expense records underlying their request. *Id.* Subsequently, counsel filed the requested information, providing the court with the hourly billings underlying their proposed lodestar. **ECF Nos. 136 & 151**.

The POF approach methodology is favored in this Circuit for determining the appropriate attorneys' fees in common fund cases, such as the instant case. *See In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995). "This method functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Id.* Thus, the court enjoys an "extremely broad" latitude to determine an appropriate fee award in a common fund case under the POF approach. *Id.* at 309.

Although the First Circuit Court of Appeals has not propounded a comprehensive list of factors to be considered when evaluating a request pursuant to this approach, sister courts within this circuit have analyzed factors set forth by the Second and Third Circuits. *See In re Lupron Marketing and Sales Prac. Litig.*, MDL 1430, 2005 WL 2006833, at *3 (D.Mass. Aug. 17, 2005). Utilizing this approach, the relevant factors are:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the

---

[15] This equals approximately $2,730,600.

> litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Id.*; *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D.Mass. 2005).

In the instant case, the total fund available to the 14,380 class members is $8.2 million. Were the fund to be split equally between class members rather than divided on a *pro rata* basis,[16] this would amount to approximately $570 per class member. *See In re Puerto Rican Cabotage Antitrust Litig.*, MDL 09-1960, 2011 WL 4537726, at *4 (D.P.R. Sept. 13, 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)) ("Analyzing the net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award.")  Although a comprehensive review of counsel's résumés confirms that counsel are well-versed in the area of ERISA litigation, and although the court respects the quality of defendants' counsel, the instant case lasted a mere three years between its inception and the court's grant of preliminary approval to the proposed settlement. While the legal issues present in the instant case indeed involve the complicated web of jurisprudence that surrounds ERISA actions and while litigating the instant case through to trial presented significant risk, settlement was reached several months after the court ruled upon defendants' motion to dismiss the instant case. Although sufficient discovery was conducted to enable the parties to reach an informed and reasonable settlement, full discovery was not concluded and defendants never filed a motion for summary judgment. *See In re Puerto Rican Cabotage,*  2011 WL 4537726, at *5 (noting that the lack of full discovery "diminishes the complexity and duration of the litigation" for purposes of assessing fees under the POF approach). While the instant case was ripe for settlement, it had not reached an advanced stage of procedural maturity at the time when settlement was reached. Although the court lauds counsels' success in reaching a reasonable settlement at a relatively early stage of the litigation, this factor weighs against the imposition of 33 1/3% of the fund

---

[16] The court does not intend to give the impression that it prefers the equal division of the fund among class members to the *pro rata* fund distribution method detailed above. Rather, the court includes this calculation to provide perspective regarding the relative size of the fund related to the settlement class.

in attorneys' fees. Additionally, although counsel assert that they have expended a combined total of 2,698.90 hours litigating the instant case, quite a few of these hours claimed are excessive or unnecessarily duplicitous as the court shall explain below when reviewing the time sheets submitted in its lodestar cross-check. Thus, the record before the court supports a finding that less than 2,698.90 hours were reasonably spent by counsel litigating the instant case. *See e.g. In re Thirteen Appeals*, 56 F.3d at 307 (noting that attorney time records are relevant to the court's inquiry under the percentage of the fund methodology as they show the "attorneys' role in the creation of the fund, and, thus inform the court's inquiry into the reasonableness of a particular percentage").

Thus, having addressed the first five factors of the POF approach, the court looks to awards granted in similar cases to determine the correct award to grant in the instant case. The 33 1/3% of the fund requested by counsel in attorneys' fees in the instant case has previously been awarded in some cases within this circuit,[17] to which plaintiffs cited in their memorandum supporting the request for fees. *See In re Thirteen Appeals*, 56 F.3d at 307 (awarding approximately 31% of the fund); *see also In re Relafen*, 231 F.R.D. at 81.[18] However, the court is wary of mechanically applying a percentage award that comprises a third of the total value of the settlement. This is particularly true as the *In re Relafen* court cited by plaintiffs acknowledged that the 33 1/3% of the total fund award granted in that case represented "a high percentage for a large settlement fund." *See* 231 F.R.D. at 81. Additionally, the *In re Relafen* counsel's efforts were herculean, as counsel prepared for an impending trial in that case even as they actively pursued settlement. *Id.* at 80. Ultimately,

---

[17] The court notes that the First Circuit Court of Appeals affirmed the district court's award of 31% of the total fund, rather than 33 1/3% in its *In re Thirteen Appeals* decision. 56 F.3d at 309. However, as the difference between 31% and 33 1/3% is relatively small, the court follows suit and analyzes the relevance of the *In re Thirteen Appeals* decision as if it were an award of 33 1/3%.

[18] Plaintiffs also cited *In re StockerYale, Inc. Sec. Litig.*, No. 05-177, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) in support of their request. However, the court does not find this case to be persuasive as it contains only conclusory statements regarding the court's inquiry into the fees requested. Likewise, *Malanka v. de Castro*, No. 88-0305, 1990 WL 253610 (D.Mass. Nov. 20, 1990), makes no specific findings supporting the award of fees and, accordingly, the court does not find it persuasive.

the *In re Relafen* counsel expended 29,000 hours litigating that case in contrast with the 2,698.90 claimed in the instant case. *See id.* at 79. Further, while the instant case has spanned several years, *In re Thirteen Appeals*, also cited in support of counsel's request, spanned a longer time-period than the instant case, and involved two hundred and seventy component cases. *See* 56 F.3d at 307; *see also In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 605 (1st Cir. 1992)(outlining the procedural history of the case). Thus, the instant case is distinguishable from those cases within this circuit where attorneys' fees of approximately 33 1/3% were awarded under the POF methodology.

Additionally, the court notes that the 33 1/3% requested by Lead Counsel represents the ceiling on typical percentage of the fund awards in the First Circuit. There are numerous cases within this circuit where awards of fees far below this range were granted and the First Circuit Court of Appeals has expressed that POF awards as low as 10% of the total fund may be appropriate. *See In re Nineteen* Appeals, 982 F.2d at 612 n.15 (citing with approval an award of 7% to find that a 10% award would be acceptable); *see also In re Tyco*, 535 F.Supp. 2d at 266 (awarding fees amounting to 14.5% of the fund); *In re Compact Disk Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 216 (D.Me. 2003) (awarding 10% of the fund); *In re Fidelity/Micron Sec. Litig.*, No. 95-12676, 1998 WL 313735, at *3 (D.Mass. June 5, 1998)(awarding fees totaling 17.5% of the fund), *remanded on other grounds* 167 F.3d 735; *Turabao Med. Ctr. v. Beach*, Nos. 96- 2250, 96-8671, 96-2290, 96-8578, 96-2459, 96-8590, 96-8712, 96-4010, 1997 WL 33810581, at *6 (D.P.R. Aug, 13, 1997) (awarding 20% of the fund in attorneys' fees). In fact, a recent study indicated that the average fees awarded within the First Circuit constitute 20% of the total fund. *See In re Puerto Rican Cabotage*, 2011 WL 4537726, at *7 (citing Theodore Eisenberg and Geoffrey P. Miller, *Attorneys' Fees & Expenses in Class Action Settlements: 1993-2008*, 7 J. Emp. Leg. Stud. 248 (2010)). Thus, there is considerable support in this circuit for an award substantially below that requested by counsel in the instant case.

Upon a review of the factors discussed above, the court finds that an award of 33 1/3% is not justified in the instant case. The court appreciates that counsel has tackled complex

legal issues and diligently pursued settlement in the instant case. However, the time reasonably expended by counsel in the instant case, the relative sizes of the fund and the class, the procedural stage of the case at the time of settlement and a comparison of the instant case with other cases within this circuit do not support the fee award requested by counsel. Rather, the court believes that 23% of the fund[19] represents a reasonable award of attorneys' fees here. In dollars and cents, this POF award equals $1,886,000 in attorneys' fees to be awarded to counsel.

Although the court's inquiry might end here, acting out of an abundance of caution, the court shall also employ a rough lodestar to cross-check the reasonableness of the POF award of attorneys' fees, following suit behind several other District Courts in this circuit. *See e.g. In re Thirteen Appeals Arising*, 56 F.3d at 307; *see also New England Carpenters Health Benefit Fund v. First DataBank, Inc.*, No. 05-11148, 2009 WL 3418628, at *1 (D.Mass. 2009) (citing *In re Compact Disk*, 216 F.R.D. at 215-16 (noting that, while a lodestar may be used as a check of the appropriateness of the POF award, it is not mandatory)); Manual for Complex Litig. §14.122 (4th ed. 2004)). "The lodestar cross-check is performed by multiplying the hours reasonably expended on the matter by the reasonable hourly billing rate." *In re Diet Drug*, 553 F.Supp. 2d 442, 485 (E.D.Pa. 2008).

In the instant case, counsel justified their request for 33 1/3% of the fund in attorneys' fees by noting that they expended 2,698.90 hours at rates ranging between up to $700 per hour for a total of $1,422,727.25 in fees. **ECF Nos. 134 & 139**. Thus, counsel argue that 33 1/3% of the fund is an appropriate award as it constitutes a 1.92 multiplier of the lodestar. *Id.*

As an initial matter, the court notes that, even if it were to find that the hours expended by attorneys were reasonable, and accept $1,422,727.50 as the correct lodestar amount for cross-check purposes, the award granted by the court herein would represent a 1.33 multiplier

---

[19] The court finds support for an award of 23% of the fund in attorneys in cases involving ERISA claims from other districts and circuits. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284-85 (3d Cir. 2009) (affirming the district court's award of 23% of the settlement in attorneys' fees); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 411856, at *8 (D.N.J. Feb. 17, 2009) (the lower court's decision).

of the fees claimed by attorneys. Thus, the lodestar cross-check multiplier would fall within the acceptable range of multipliers in common fund cases, even if the court were to find that the hours expended by counsel were reasonably expended and that the billing rates were reasonable as well. *See In re Relafen*, 231 F.R.D. at 82 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (charting multipliers in common fund cases and noting that they typically ranged from 1.0 to 4.0).[20]

While the court need not conduct a detailed inquiry into the exact time billed by each attorney in the instant case,[21] it finds it prudent to note several generalized observations regarding the time billed by counsel in the instant case. *See In re Tyco*, 535 F.Supp. 2d at 270 ("When the lodestar is used [as a cross-check of the POF], the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.") For example, one attorney who bills at a rate of $695 per hour expended 32.70 hours for travel between New York and Puerto Rico for the final fairness hearing, attendance at the same, which lasted 35 minutes, and preparation for the same.[22] The same attorney billed 49.60 hours for reviewing the motion to dismiss, conferring with co-counsel regarding the same and revising the draft opposition to the motion to dismiss, which was drafted by other attorneys. Likewise, an attorney billing $600 per hour expended 45.10 hours to coordinate the procedural aspects of the notice to be sent to class members, to insert the minor changes to the notice which were necessary after entry of the court's preliminary approval of the settlement, and

---

[20] Plaintiffs cite this case for the same proposition in their memorandum in support of the request for fees. **ECF No. 139**.

[21] All information regarding attorneys' hourly rates and hours expended in the instant case is synthesized from counsel's submissions at **ECF Nos. 136, 149 & 151**.

[22] The same attorney billed 35.30 hours for travel to, preparation for and attendance at the preliminary fairness hearing. However, although this number still appears to be high given the ease of travel between New York and Puerto Rico and the relatively short length of the hearing, as the date of that hearing was continued and the attorney indicated that he had to travel to Puerto Rico twice as a result, the court finds this expenditure of time less excessive than the 32.70 hours billed for the final fairness hearing.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                              Page 14

to confer with co-counsel and defendant's counsel regarding the changes. A paralegal billing at a rate of $250 per hour expended 1.5 hours calendaring court dates in the instant action. Even assuming that the hourly rates are reasonable despite a trend towards much lower rates in this district,[23] each of these entries is excessive.

Similarly, from the record, it is apparent that the hours claimed include duplicative efforts by counsel. For example, seven attorneys, billing between $350 and $700 per hour, billed a total of 427.50 hours opposing defendants' motion to dismiss and responding to defendants' objections to the Magistrate Judge's Report and Recommendation regarding the same. While the court is aware that the motion to dismiss presented complex legal issues, the time expended is not justified, particularly by attorneys well-versed in this area of the law. Thus, the court can only interpret this as an example of billing for duplicative efforts undertaken by several attorneys.

Ultimately, as the court noted above, the 1.33 multiplier which would result from use of the hourly lodestar provided by counsel to cross-check an award of 23% of the fund is reasonable and acceptable under the applicable jurisprudence. Further, were the court to meticulously prune excessive and duplicative time billed by counsel[24] or were the court to adjust hourly rates to ones more acceptable in this district, this multiplier would rise to more closely resemble the 1.92 multiplier propounded by counsel. Thus, the lodestar cross-check

---

[23] The court is unaware of any class action in this district in which attorneys, including those from other jurisdictions, have received hourly fees equal to those requested in the instant action. *See e.g. Guillemard v. Contreras*, 603 F.Supp. 2d 301, 316-317 (D.P.R. 2009) (surveying other cases in this district before granting out-of-state counsel up to $250 per hour). Even if the court were to allow all attorneys and paralegals to bill at the $250 per hour rate applied to out-of-state counsel from Boston in *Guillemard* and were to multiply this hourly rate by the 2,698.9 hours counsel claim to have expended, the resulting lodestar would be only $674,725. A similar approach to that contained herein was utilized recently, wherein out-of-state counsel's average hourly rate was calculated to be $465 per hour. *See In re Puerto Rican Cabotage*, 2011 WL 4537726, at *11. There, as here, the court declined to address the appropriateness of the hourly rate, but awarded fees which amounted to a multiplier of only slightly more than the lodestar amount set forth by counsel. *See id.*

[24] The court notes that such an exercise is neither proper nor necessary when merely utilizing the lodestar as a cross-check when awarding fees under the POF method. Further, because counsel provided the court with "block billing" accountings of time expended, rather than detailing particularized activities, such an exercise is impossible based upon the record before the court at the present time.

Civil No. 09-1552 (ADC)
Civil No. 09-1646 (ADC)
Civil No. 09-1682 (ADC)                                                                                    Page 15

confirms the reasonableness of the 23% of the fund to be awarded in attorneys' fees. Accordingly, counsel's request for an award of 33 1/3% of the total fund (**ECF Nos. 134 & 139**) is **GRANTED IN PART AND DENIED IN PART** as the court grants the request for fees, but limits the award to 23% of the fund.

Further, with respect to costs and expenses requested by counsel, the court must act pursuant to a "quasi-fiduciary" duty to class members while exercising its "wide latitude in shaping the contours" of an award of expenses. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 736 (1st Cir. 1999). Thus, the court previously requested that counsel provide supporting documentation, such as receipts, checks and invoices, for the expenses claimed by counsel. **ECF No. 148**. Subsequently, counsel provided the court with the requisite supporting information, which indeed indicates that counsel expended $167,225.67 in prosecuting the instant action. **ECF No. 149**. The expenses for which counsel seek reimbursement relate to travel to and from Puerto Rico for in-court appearances,[25] filing fees, research fees, docket fees, postage, expert fees, copying and faxing documents. Upon careful review of the supporting documentation submitted by counsel, the court finds that these expenses are not excessive or unnecessary. Thus, these expenses were reasonably incurred and the court **GRANTS** counsel's request for reimbursement (**ECF No. 134 & 139**) in the amount of $167,225.67.

## V.   Conclusion

For the reasons set forth above, the court hereby **NOTES ECF Nos. 140, 142, 143, 145 & 151**. The court also **NOTES ECF No. 136** but **DENIES** counsel's request for payment of attorneys' fees and expenses prior to the disbursement of settlement funds to class members contained therein.

Finally, the court **GRANTS IN PART, DENIES IN PART AND FINDS AS MOOT IN PART ECF No. 134** as follows:

---

[25] The court notes that counsel did not spend lavishly upon travel, but rather appear to have purchased coach class plane tickets and have stayed in reasonable accommodations while in San Juan.

(1) GRANTED as to the request for final approval of the proposed settlement under Rule 23(e);

(2) MOOT as to the request for class certification as the court already unconditionally certified a settlement class;

(3) GRANTED as to the request for approval of the plan of allocation;

(4) GRANTED IN PART AND DENIED IN PART as to the request for attorneys' fees; and

(5) GRANTED as to the request for reimbursement of expenses.

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, this 12th day of March, 2012.

**S/AIDA M. DELGADO-COLÓN**
**Chief U.S. District Judge**